CARLETON et al. v. THREE HUNDRED SIXTY-SEVEN TONS OF COAL.

(District Court, D. Maine. July 18, 1913.)

No. 217.

1. SHIPPING (§ 37*)—CHARTER—VALIDITY OF CONTRACT.

Telegrams and a letter passing between the parties construed, and *held* to constitute a valid charter of a schooner for the carriage of a cargo of coal: the vessel having at once entered upon and performed the contract.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 127–135; Dec. Dig. § 37.*]

2. SHIPPING (§ 175*)—DEMURRAGE—LIABILITY OF CHARTERER.

Where the agents of the charterer of a vessel for the carriage of a cargo of coal directed her to report to a coal company for loading, the charterer became responsible for the acts of such company, and liable for demurrage because of its failure to give customary dispatch in loading.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 572–574; Dec. Dig. § 175.*]

In Admiralty. Suit by Frank J. P. Carleton and others, owners of the schooner Adelia T. Carleton, against Three Hundred and Sixty-Seven Tons of Coal; The Camden Yacht Building & Railway Company, claimant. Decree for libelants.

H. L. Withee, of Rockport, Me., for libelants.
S. C. Perry, of Portland, Me., for respondent.

HALE, District Judge. The owners of the schooner Adelia T. Carleton, of Rockport, Me., bring the libel in this case against a cargo of 367 tons of coal carried by that schooner from South Amboy, N. J., to Camden, Me. They seek to recover demurrage for six days' detention in loading the vessel at South Amboy, and a small balance for freight. The claimant, the Camden Yacht Building & Railway Company contends that there was no valid charter; and that the schooner was given due dispatch in loading.

[1] The libelants rely upon a parol-charter of the vessel. The following telegrams and letter are put in evidence:

"New York, N. Y., July 6, 1912.
"To S. E. & H. L. Shepherd, Rockport, Me.

"Can you use Carleton three eighty tons thirteen half draft coal eighty cents. Answer care Eliot Company. D. S. Kent."

"Rockport, Me., July 6, 1912.
"To Capt. D. S. Kent, Cr. J. A. Eliot and Co., New York.

"Yes if we can buy coal. Will wire you Monday. When will vessel be ready? S. E. & H. L. Shepherd."

"New York, July 6, 1912.
"To S. E. & H. L. Shepherd, Rockport, Me.

"Carleton ready about Tuesday. Understand Garfield Proctor can furnish coal. D. S. Kent."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Rockport, Me., July 6, 1912.
"To' Capt. D. S. Kent, Care J. A. Eliot & Co., New York.
    "*Have ordered coal of Garfield Proctor.*          S. E. & H. L. Shepherd Co."

"July 6, 1912.
"Capt. David S. Kent, c/o J. A. Eliot & Co., New York, N. Y.

"Dear Captain: We received your telegrams and without quoting beg to state that we understand that your vessel will be ready Tuesday and that you are willing to accept eighty cents freight to Camden and that the Garfield & Proctor Coal Company are in a position to furnish coal and we immediately wired them to load the Carleton for account of the Camden Yacht Building & Railway Company, Camden. We did not state the rate of freight. As a matter of fact that is immaterial. On the vessel's arrival here, say if they put in freight as agreed upon or eighty cents it is immaterial.

"Hoping you will have prompt dispatch and that you will have a quick passage and thanking you for taking the matter up with us, we are,
          "Very truly yours,          S. E. & H. L. Shepherd."

The telegram of Capt. Kent, and the telegrams in reply signed by .S..E. & H. L. Shepherd, who acted for the claimant, together with the letter of confirmation, may fairly be held to constitute an offer and acceptance. The proofs indicate that at the end of this correspondence both parties understood that a contract had been made, for the letter in behalf of the claimant expresses the hope that the ship will have prompt dispatch and a quick passage. The proofs show also a ratification of the contract, and that the schooner entered upon its performance. In James v. Brophy, 71 Fed. 310, 312, 18 C. C. A. 49, in speaking for the Circuit Court of Appeals in this Circuit, Judge Webb passed upon a parol contract, and gave weight to the fact that the ship had entered upon its performance, and that the subsequent action of both parties to the contract was of probative value in determining the existence of a charter. Upon a careful consideration of the proofs in the case at bar, I am of the opinion that the libelant has met the burden of proving a valid charter. The Phebe, 1 Ware, 268, Fed. Cas. No. 11,064; Huron Barge Co. v. Turney (D. C.) 71 Fed. 972; James v. Brophy, 71 Fed. 310, 312, 18 C. C. A. 49, and cases cited.

I cannot sustain the contention of the claimant that the charter was merely a conditional one. The proofs do not show that any conditions were accepted by the libelants. I think an unconditional charter has been proved.

[2] The claimant further urges that there was no delay in loading, but that the schooner was given customary dispatch. It appears by the evidence that the vessel reported at South Amboy at 7:30 a. m., July 10th; that the captain demanded a cargo every day; that she was loaded July 19th, and that thus she was lying at that port 10 days; that on the fourth day, July 13th, Capt. Kent notified the charterer that the vessel was then "on its hands"; and that it lay for six full days thereafter. The proofs satisfy me that three days are the customary lay days at South Amboy. The claimant seeks to justify the delay by showing a shortage of egg and stove coal at this time. The testimony does not, however, indicate that the size of the coal was specified between the parties when the contract was made. On July 10th the shippers were notified by a telegram from S. E. & H. L. Shepherd, through

the broker, to load the Carleton with "half egg and half stove; egg on bottom, if not too late." So far as I can find from the testimony, there was no notice before this as to the size of the coal required. There is nothing in the proofs to indicate but that the vessel might carry nut or pea coal under the contract, and it seems to be admitted on all sides that vessels carrying those sizes were getting prompt dispatch.

The claimant proves no sufficient reason for the delay. The testimony shows that the cargo was ordered direct from the Garfield & Proctor Coal Company, the shippers, who must be held to have acted for the charterer. In Hinckley v. Wilson Lumber Co., 205 Fed. 974, an opinion was handed down on June 2d last, wherein this court had occasion to refer to Donnell v. Amoskeag Mfg. Co., in this Circuit, 118 Fed. 10, 11, 55 C. C. A. 178, 179, where the charter provided:

"Vessel to report to the Consolidation Coal Company, Baltimore, for orders; it being understood vessel shall be loaded by them in turn."

And in speaking for the Court of Appeals Judge Putnam said:

"By consigning the vessel to the Consolidation Coal Company, the Garfield & Proctor Coal Company, in whose shoes the claimant stands, made itself responsible for the acts or omissions of the consignee, and in that respect it stands the same as though the stipulation had been that the vessel should report to itself."

In the case at bar, I am of the opinion that the charterer must be held responsible for the acts of Garfield & Proctor, the shippers, to whom the vessel was consigned. The claimant is also responsible for the acts of the Shepherd Company, its agent, throughout the transaction. After a careful consideration of the proofs, I am convinced that the responsibility for the delay in loading was upon the claimant and its agents. The vessel was delayed at South Amboy six days beyond the customary lay days, and this delay was due to the fault of the charterer and its agents. It is proved that the rate of demurrage for vessels of the class of the Carleton was eight cents per ton of cargo per day. Under the evidence, the schooner is entitled to six days' demurrage on the coal carried, $176.16. It appears that Capt. Kent, for the vessel, refused to receive a balance of $10 due him for freight; he evidently supposing that this action was necessary in order to "bind his claim." It appears that the $10 has never been paid. I see nothing in the testimony to justify the conclusion that the payment of $10 has been waived, and I see no reason why it should not be added to the amount of damages. Notice of the lien upon the cargo was promptly given the consignee, and I am of the opinion that the lien has not been waived. I have not undertaken to recite or to comment upon the testimony in detail.

The parties have expressed the intention that I shall pass upon the question of damages, without reference to an assessor. I am of the opinion that the libelants are entitled to a decree of $186.16, with interest from July 28, 1912, the date when demand was made upon the cargo. A decree may be entered for the sum of $196, with costs for the libelants.